[No. 22802. Department Two. March 23, 1931.]

THE STATE OF WASHINGTON, *Respondent,* v. BILL
BRUMAS, *Appellant.*[1]

*Robertson & Smith,* for appellant.

*Chas. W. Greenough* and *Frank Funkhouser,* for
respondent.

FULLERTON, J.—The appellant, Brumas, was found
guilty by the verdict of a jury of the crime of main-
taining and conducting a place for the unlawful sale
of intoxicating liquors. The appeal is from the judg-
ment and sentence pronounced upon the verdict.

The facts are not in serious dispute. The place the
appellant was convicted of maintaining and conducting
is known as the New Washington Hotel, and is situated
in the city of Spokane. The hotel comprises the two
upper stories of a three-story building, and has some

[1]Reported in 295 Pac. 1023.

fifty-eight rooms, numbered in the usual manner and fitted up for the use of guests. The license for operating the place as a hotel, issued by the city of Spokane, stands in the name of James Arvis. Arvis, however, resides and is employed in an adjoining state, and visits the place only at irregular intervals, usually once in each month. The appellant was, at the times hereinafter mentioned, in the sole charge and management of the place.

The place was searched for intoxicating liquors on a number of times by the city police and the Federal prohibition officers. One of such times was on December 3, 1929, when six pints of whiskey were found in room numbered 38. It was again visited on January 3, 1930, when twenty-seven pints of whiskey were found in a cupboard in room 26. Search at that time also revealed a serving glass, behind a fire-escape sign in a hall of the building near the room, which bore evidences of recent use. The place was again visited by the officers on January 27, 1930. At this visit, they found a suitcase in room 26, containing thirty-two pints of whiskey in pint flasks.

On February 26, 1930, a police officer went to the place with another person, and, meeting the appellant, asked him for a drink of liquor. The appellant spoke to an employee of the place named Sumas in a language which the officer did not understand. Sumas took them to room 42 on the upper floor of the building, and sold each of them a drink of whiskey. The officer then asked him for a pint of whiskey, and this Sumas sold to him for a price of two dollars.

The police and Federal officers made another search of the place on March 15, 1930. At this time they found sixteen pint bottles of moonshine whiskey on a dresser in room 38. The bottles apparently had just

been filled with whiskey, as none of them contained corks, and in one was a funnel. Sumas was in the room at the time the officers entered, and was seen to put a bottle in his pocket. This was later taken from his person, and was found to contain whiskey.

The hotel is entered by a stairway leading from the street to its lower floor. At the head of the stairway is the office of the hotel, and this is so situated that any one ascending the stairway from the street can be seen from the office throughout his ascent. At the time of the last search mentioned, there seems to have been no one in the office. As soon, however, as the officers entered the building, an alarm was given, evidently for the purpose of making the fact known.

The rooms in which the liquors were found at the different searches appeared from the hotel register to have been rented to guests who had paid their rentals in advance. None of these persons was found in the rooms by the officers, and the officers were unable to locate any of them for whom inquiry was made. No liquors were found in the rooms occupied by the appellant, and nothing more than the matters we have related connects him with the possession of the liquors, or with knowledge that intoxicating liquors were in the several rooms in which they were found.

The court at the trial of the cause permitted the state to introduce in evidence the liquors found in the various searches, and to show the circumstances under which they were found. This is assigned as error, the argument being that the appellant was not shown to have been in any way connected with their possession.

But we think the evidence admissible. In one of the transactions, the participation of the appellant therein was directly shown, and as to the others, he was informed, after each search, of the finding of the liquors,

and, if he wished to avoid liability therefor, it was his duty to see that the offense was not repeated. There was, moreover, evidence from which the jury could draw the conclusion that the liquors were kept for sale, and not for the sole use of the guests occupying the rooms. The serving glasses found, the fact that the liquors were placed in receptacles convenient for delivery, and the fact that the quantities found were large, all point to the conclusion that sale and not individual use was intended.

Particular objection is made to the admission in evidence of the liquors taken from the possession of Sumas. It is argued that this in no way tended to prove the appellant's connection with the transaction. But Sumas was the employee of the appellant; he was in the room in which the officers found the liquors at the time of the last search, and the person who was preparing the bottles for delivery. As we have stated, he was seen to put a bottle in his pocket as the officers entered, and it was taken from his person shortly after he left the room. This was not an unlawful search of his person, and, clearly, the liquor found was admissible as a circumstance to support the state's case.

The next contention is that the evidence is not sufficient to connect the appellant with the crime charged, and that the court should have sustained his motion for a directed verdict of acquittal. This contention we shall not further discuss. We think the evidence related is sufficient to show that the question of the appellant's guilt was a question of fact for the jury, rather than one of law for the court.

The court gave an instruction on the statutory presumption arising from the unlawful possession of intoxicating liquors, but failed to give a further instruction, although requested by the appellant so to do, to the effect that such unlawful possession would not

of itself give rise to a presumption that the place at which the liquors were found was a place maintained or conducted for the unlawful sale of intoxicating liquors. A similar refusal was held by us to be error, requiring a new trial, in *State v. Lesh,* 132 Wash. 309, 232 Pac. 302, *State v. Lesh,* 132 Wash. 316, 232 Pac. 305, and *State v. Donohue,* 141 Wash. 146, 250 Pac. 1090.

The state argues, somewhat strenuously, that the instructions given by the court covered the matter involved, although perhaps not given in the direct language of the request. We cannot so read the instructions. It seems to us that, if they bear on the question at all, they give rise to the inference that such a presumption would arise from the evidence of possession, rather than the inference that it would not arise. The appellant was entitled to a direct instruction on the matter, in language incapable of a doubtful interpretation. Such an instruction was not given.

For the error in refusing to give the requested instruction, the judgment of conviction is reversed, and the cause remanded for a new trial.

TOLMAN, C. J., MILLARD, BEELER, and BEALS, JJ., concur.